The judgment should be affirmed, with costs.

HARDIN, P. J., and MERWIN, J., concurred.

Judgment affirmed, with costs.

---

In the Matter of the Application of LEMON THOMSON and Others, Plaintiffs, to Float Logs and Timber down the Moose River over Lands of which JULIA L. DE CAMP and Another are the Owners and Persons Interested, Defendants.

JULIA L. DE CAMP, Appellant; LEMON THOMSON and Others, Respondents.

*Eminent domain — statutory authority must be shown, and strictly construed — taking land for the floating of logs in Moose river — Laws of* 1851, *chap.* 207; 1894, *chap.* 712; *Code of Civil Procedure, chap.* 23, *title* 1.

The power of eminent domain, which resides in the State as an attribute of sovereignty, is dormant until called into exercise by an act of the Legislature.

Whenever an attempt is made by the State or by a corporation to take private property under this power, those claiming the right must be able to point to a statute conferring it.

Such statutes are to be construed strictly rather than liberally.

The owner of woodlands upon the Moose river, in the Adirondack region, has no right, under the act, chapter 207 of 1851, declaring that river a public highway, nor under the act, chapter 712 of 1894, amendatory of the act of 1851, to take proceedings under the Condemnation Law, Code of Civil Procedure, chapter 23, title 1, to condemn an easement in the river and lands on either side of it to the extent of ten feet, in order to enable him to float his logs to market.

The act of 1851 does not provide for the condemnation of lands above high-water mark in any event whatever, and although section 4 of the amendatory act permits a person desirous of floating logs down the stream to construct certain

FOURTH DEPARTMENT, APRIL TERM, 1895.          [Vol. 86.

chutes and reconstruct certain booms, it provides for compensation only to the owner or occupants of such booms for the damages resulting from these acts and from the floating of logs.

It provides no compensation for the taking of lands, nor for an improvement of the river for highway purposes, as by the blasting of rocks and the removal of snags in the channel, and, therefore, an application contemplating such acts upon the part of an owner of woodlands higher up the stream has no statutory authority to justify it.

The General Condemnation Law of the Code of Civil Procedure (Chap. 23, title 1) is a statute which merely regulates the procedure for the condemnation of property, and authorizes such procedure only when the person instituting it has authority under some independent statute to acquire the title to real property for public use.

APPEAL by Julia L. De Camp from an order of the Supreme Court, made at the Onondaga Special Term and entered in the office of the clerk of the county of Herkimer on the 12th day of January, 1895, denying her motion to dismiss the petition in this proceeding, which, it is claimed by the petitioners, is authorized by chapter 207 of the Laws of 1851, as amended by chapter 712 of the Laws of 1894.

The Moose river runs in part through Brown's tract in the Adirondack region.

*C. D. & Seth C. Adams*, for the appellant.

*Charles E. Snyder*, for the respondents.

PER CURIAM :

This proceeding was instituted under the provisions of the Condemnation Law (Code Civ. Proc. chap. 23, tit. 1) to condemn and acquire a right, privilege and easement to float logs, pulp wood and timber over the defendants' lands down and through the Moose river and its branches, as they flow across township 7 and the north half of township 1, John Brown's tract, town of Wilmurt, N. Y., together with the right, privilege and easement to make all necessary improvements by way of removing any obstructions that may exist in said river and its branches, such as removing snags, blasting stones, boulders, etc., and also to condemn for such use a strip of land along and upon the shores of said river, its branches and tributaries for a distance of ten feet back from high-water mark upon each side thereof.

The plaintiffs have purchased and are the owners of the trees, timber and logs upon a large tract of land lying above the premises of the defendant De Camp, upon and near the Moose river and its tributaries, which they desire to float down these streams to their mills and to market, and by this proceeding seek to condemn an easement over the lands of the defendant together with ten feet of land on each side of said streams to enable them to accomplish that purpose.

Upon the presentation to the court at Special Term of the petition herein, the defendant De Camp specially appeared and interposed preliminary objections to the petition and moved to dismiss the same upon the grounds:

" 1. The court has no jurisdiction of the subject-matter to condemn the stream and real estate described in the petition, for a highway, public or private ; the Moose river acts referred to in said petition and annexed thereto are invalid.

" 2. That the petitioners are not authorized to institute this proceeding under the Condemnation Law and the court has acquired no jurisdiction over defendant De Camp.

" 3. That the petition does not show on its face that the petitioners are entitled to the judgment sought or prayed for."

The motion was then reserved without prejudice until after the filing of an answer by defendant De Camp, which was then filed and made a part of the papers on said motion. The court thereupon denied the defendant's motion, overruled her preliminary objections, and in pursuance of section 3367 of the Condemnation Law ordered that the issues raised by the petition and answer be referred to a referee to hear and determine.

The questions presented by this ruling are whether the plaintiffs had any authority to institute this proceeding, and whether upon the facts alleged in the petition they were authorized to condemn the defendant's lands. That the plaintiffs had no authority to condemn them for the purposes stated in the petition is manifest, unless such authority has been conferred upon them by some act of the Legislature. A statutory authority is requisite to justify the taking of private property for public use under the power of eminent domain, and those claiming the right must be able to point to a statute conferring it, and in construing statutes which are claimed

to authorize the exercise of the power of eminent domain, a strict, rather than a liberal, construction is the rule. (*In re Poughkeepsie Bridge Co.*, 108 N. Y. 483.) In discussing the question in that case, ANDREWS, J., so clearly and fully states the doctrine applicable to this question that a quotation from his opinion cannot well be omitted. He says: "The power of eminent domain which resides in the State as an attribute of sovereignty is, nevertheless, dormant until called into exercise by an act of the Legislature. Until a statute authorizes an exercise of the power, it is latent and potential merely, and not active or efficient, and the State can neither exercise the prerogative, nor can it delegate its exercise, except through the medium of legislation. Therefore, it is that wherever an attempt is made, either by the officers of the State or by a corporation organized for a public purpose, to take private property under the power of eminent domain, the officers or body claiming the right must be able to point to a statute conferring it. In the absence of statutory authority private property cannot be invaded by this power, however strong may be the reasons for the appropriation. In construing statutes which are claimed to authorize the exercise of the power of eminent domain, a strict, rather than a liberal, construction is the rule. Such statutes assume to call into active operation a power which, however essential to the existence of the government, is in derogation of the ordinary rights of private ownership and of the control which an owner usually has of his property."

Under the rule stated, the question presented is whether the Legislature has, by any statute, authorized the plaintiffs to condemn the defendant's property for the purposes mentioned in the petition herein. The only pretended authority for these proceedings is contained in chapter 207 of the Laws of 1851, which was an act entitled, "An act declaring Moose river, together with the north and south branches thereof, in the State of New York, a public highway, and regulating the passage of logs and timber down the same," and an act to amend the same, passed May 16, 1894 (chap. 712), by which section 4 of that act was amended. Section 1 of the original act declares Moose river to be a public highway for the purpose of floating logs and timber; section 2 describes the manner in which booms shall be constructed; section 3 provides the penalty for obstructing the channels of the river, except as provided in the preceding section;

section 4, as amended in 1894, which is the section relied upon by the plaintiffs, provides : " Persons desirous of floating logs or timber down the said stream may construct a chute or apron in connection with any dam across said stream, and may reconstruct any booms already constructed, or hereafter to be constructed in, over and across said stream, in such manner as to allow logs and timber to pass by the same, doing no unnecessary damage to the owner or occupants of said boom, and paying to such occupant or owner all damages that he or they may sustain by reason of the floating of logs and timber, or the alteration of dams or booms, said damages to be ascertained by three commissioners to be appointed by the Supreme Court, as provided for in the Condemnation Law, on the application of either party, and notice of ten days to the other party, unless the parties can agree ; nor shall this act be construed to impair or abridge any private or individual rights in the construction of bridges, dams or booms across said river, except so far as is necessary for the improvement of said river and floating logs and timber down the same."

While this section purports to give persons desirous of floating logs or timber down the stream the right to construct a chute or apron in connection with any dam across it and to reconstruct any booms already constructed or to be constructed over said stream, in such manner as to allow logs and timber to pass the same, doing no unnecessary damage to the owner or occupants of said boom, it provides for compensation only to the owner or occupants of such booms and for paying to such occupants or owners all damages he or they may sustain by reason of the floating of logs and timber, or the alteration of dams or booms in the manner prescribed in that section.    We find nothing in this act which makes provision for the payment of damages to the owners of land over which this river runs for any improvement of the river for highway purposes by removing obstructions by blasting stones, rocks and boulders, and removing snags, or for acquiring any of the owners' land therefor. Indeed, the only damages that seem to be provided for are such as the owners or occupants of booms along the river may have sustained by reason of the floating of logs and timber, or the alteration of dams or booms.    This falls far short of providing for damages for the taking of the defendant's property for the purpose of improv-

ing Moose river and its tributaries, or authorizing the condemnation of such property for that purpose. We find nothing in the statute, when construed in accordance with the doctrine already stated, which would authorize this proceeding for the condemnation of the defendant's property. There is nothing in the Condemnation Law that would authorize it, as the purpose of that statute is simply to regulate the procedure for the condemnation of property, and authorizes such procedure only when the person instituting it has authority under some independent statute to acquire the title to real property for public use. (Code Civ. Proc. § 3359.)

While the constitutionality of the statute of 1851, as amended in 1894, may be doubted, still we deem it unnecessary to determine that question. If the statute is constitutional the rights given by it can be exercised and enjoyed independently of any action by the court to condemn the defendant's property or any part thereof, and so far as those acts are justified by that statute, they may be performed by the plaintiffs without liability to the defendant, except as in the act provided. So, too, if it be admitted that the Moose river and its tributaries are public highways by common law, the plaintiffs have the right to properly use them as such, and so far as that right extends no condemnation is necessary. But here the plaintiffs seek to condemn the defendant's property not only in the stream or alleged highway, but for ten feet upon each side. We are utterly unable to find any statute or authority justifying this proceeding, and are of the opinion that the court below erred in denying the defendant's motion to dismiss it.

We think this order was appealable. If, upon the case presented by the petitioners, the court was not authorized to appoint a referee and acquired no jurisdiction, the defendant's motion should have been granted, and this court, upon appeal, has the power to inquire and decide whether the court had authority to act upon the application. (*Matter of the City of Buffalo*, 64 N. Y. 547.)

It follows that the order appealed from should be reversed and the proceeding dismissed.

Present — HARDIN, P. J., MARTIN and MERWIN, JJ.

Order reversed, with ten dollars costs and disbursements, and proceeding dismissed, with costs.