■ Town of Fenton et al., Appellants, v Town of Chenango, Respondent. (Action No. 1.) In the Matter of Town of Chenango, Respondent, v Town of Fenton Planning Board et al., Appellants. (Proceeding No. 1.) Town of Fenton, Appellant, v Town of Chenango, Respondent. (Action No. 2.) In the Matter of the Acquisition of Real Property by the Town of Chenango, Respondent. Town of Fenton, Appellant, et al., Respondent. (Proceeding No. 2.) [937 NYS2d 677]—

Lahtinen, J.

The Chenango River is the boundary between the two Broome County towns, with Chenango on the west side and Fenton on the east side. Mining operations in Fenton from the mid-1970s into the 1990s included soil removal and digging in close proximity to the river, which resulted in two large ponds that were separated from the main channel of the river by a narrow berm. The berm was first breached in the 1980s; the breach eventually grew over time resulting in the main flow of the river changing to go through the ponds created by the mining. This caused the original channel to become low and, during summer months, almost dry.

The original river channel was where the discharge pipe from Chenango's wastewater treatment plant ended. As a result of the change in the channel, there was often insufficient water in the original channel for the effluent discharge to meet the dilution ratio required by the Department of Environmental Conservation (hereinafter DEC). On the other side of the river and downstream, Fenton operated a waterworks that draws water from an aquifer located underneath the river. The aquifer is subject to Fenton's Aquifer Law. Joint meetings and efforts by the two towns, DEC and other agencies from the 1990s to mid-2004 failed to result in a solution to the problems caused by the change in the main channel of the river. An attempt to close the breach in the berm was unsuccessful and further attempts were eventually determined to be infeasible.

Active involvement by Fenton in the joint discussions ceased in mid-2004. The options under consideration included (1) extending the discharge pipe approximately 500 feet to reach the new channel at a cost of about $107,000, or (2) extending it 3,000 feet south to where the new river channel rejoins the old channel at a cost of about $800,000. After extensive study and review, Chenango received a permit from DEC to proceed with the first option. It had also received written permission from the owner of the property where the extension would be placed to extend through his property; however, before work began, the owner sold the property to respondent JAMCAM, LLC, which failed to record the deed. Chenango extended the pipe 472 feet to the new channel and began discharging from the extended pipe in September 2008. Fenton asserted that it was

not aware of the extension of the discharge pipe until after the project had been completed.

In October 2008, Fenton and plaintiff Hillcrest Water District No. 1 (hereinafter collectively referred to as plaintiffs) commenced the first of these actions against Chenango (action No. 1) alleging violations of Fenton's Aquifer Law and seeking, among other things, a permanent injunction. Although Chenango reserved its position that the change in the course of the river had moved its boundary east to the new channel, it nevertheless applied to respondent Town of Fenton Planning Board for a permit under Fenton's Aquifer Law and, when that permit was denied, Chenango commenced a combined CPLR article 78 proceeding and declaratory judgment action (proceeding No. 1) seeking to annul the Board's determination and declare its actions immune from the Aquifer Law. Supreme Court (Rumsey, J.) directed, among other things, that the issue raised in the declaratory judgment action regarding the enforceability of the Aquifer Law against Chenango be consolidated with action No. 1 and deemed a counterclaim in such action.

In August 2009, Fenton purchased from JAMCAM (with JAMCAM retaining an easement) about 13 acres, including a portion of the berm where the extended discharge pipe had been constructed. Fenton then commenced action No. 2 against Chenango alleging trespass and demanding, among other things, removal of the pipe. Fenton moved for summary judgment in this action. In July 2010, Chenango brought proceeding No. 2 pursuant to EDPL article 4 seeking to acquire by eminent domain the small strip of property containing the extended discharge pipe.

As relevant to this appeal, Supreme Court (Rumsey, J.), in an order entered October 29, 2010, granted Chenango's condemnation petition in proceeding No. 2 and directed Chenango to file the acquisition map, at which time title would vest. In another order entered the same date, Supreme Court (Rumsey, J.) denied Fenton's motion for summary judgment in its trespass case (action No. 2), without prejudice in the event that Chenango failed to file the acquisition map in the condemnation proceeding. Thereafter, Chenango moved for summary judgment dismissing action No. 1. In an order entered April 4, 2011, Supreme Court (Lebous, J.) granted the motion, concluding that, under the balancing test established in *Matter of County of Monroe (City of Rochester)* (72 NY2d 338 [1988]), Chenango had immunity from Fenton's Aquifer Law. Plaintiffs' subsequent motion to renew was denied in June 2011. Plaintiffs appeal from the two October 2010 orders, the April 2011 order and the June 2011 order.

Plaintiffs contend that, since Fenton acquired the property where the extended pipe is located first, Chenango's EDPL article 4 petition should have been dismissed under the prior public use doctrine. The general rule is that "where lands have once been taken or acquired for public use, they cannot be taken for another public use, at least if such other public use would interfere with or destroy the public use first acquired, unless the intention of the legislature that such lands should be so taken is shown by express terms or necessary implication" (*New York Cent. & Hudson Riv. R.R. Co. v City of Buffalo*, 200 NY 113, 117-118 [1910]; *see Buffalo Sewer Auth. v Town of Cheektowaga*, 20 NY2d 47, 52-53 [1967]; *Matter of City of Mechanicville v Town of Halfmoon*, 23 AD3d 897, 899 [2005]; *Matter of Board of Coop. Educ. Servs. of Albany-Schoharie-Schenectady-Saratoga Counties v Town of Colonie*, 268 AD2d 838, 841-842 [2000]). Supreme Court, however, determined that Fenton could not successfully invoke the prior public use doctrine because it failed to obtain a permit from DEC pursuant to ECL article 15 prior to acquiring the property. "[T]he legislative purpose of ECL article 15 is to give the State exclusive control of water sources" (*Williams v City of Schenectady*, 115 AD2d 204, 205 [1985]). When a municipality seeks to acquire property to serve as a buffer or otherwise protect an existing source of water, it is required to obtain a permit from DEC (*see Matter of County of Fulton*, 136 AD2d 115, 117 [1988]; Weinberg, Practice Commentaries, McKinney's Cons Laws of NY, Book 17½, ECL 15-1501, at 257; *see also Matter of City of Schenectady v Flacke*, 100 AD2d 349, 353-355 [1984], *lv denied* 63 NY2d 603 [1984]).

Here, Chenango obtained a permit under ECL article 15 from DEC prior to commencing its condemnation proceedings. In fact, DEC and other agencies conducted various tests and concluded that the pipe extension would not compromise the aquifer. Fenton, on the other hand, did not obtain a permit from DEC nor has it presented proof that it sought one at any time with respect to its purchase of the relevant portion of property. Plaintiffs' argument for distinguishing this case from the holdings in *Matter of County of Fulton (supra)* and *Matter of City of Schenectady v Flacke (supra)* is unpersuasive, as is their contention that we should overrule such precedents. Under the circumstances, we agree with Supreme Court that the prior public use doctrine was not a viable defense to the condemnation proceeding and, hence, Chenango's EDPL article 4 petition (proceeding No. 2) was properly granted.

Fenton also appealed from Supreme Court's denial of its motion for summary judgment in its trespass action (action No. 2).

It acknowledges, however, that its argument is premised upon this Court reversing Supreme Court's determination in proceeding No. 2. Since we have upheld that determination, Fenton's argument fails, and we affirm Supreme Court's order in action No. 2.

Next, we address plaintiffs' assertion that it was error to grant summary judgment dismissing the complaint in action No. 1. A dispute between governmental entities regarding whether one entity is exempt from the local regulations of the other is resolved by balancing the public interests (*see Matter of Crown Communication N.Y., Inc. v Department of Transp. of State of N.Y.*, 4 NY3d 159, 165-166 [2005], *cert denied* 546 US 815 [2005]). A non-exhaustive list of potential factors to be weighed includes "the nature and scope of the instrumentality seeking immunity, the kind of function or land use involved, the extent of the public interest to be served thereby, the effect local land use regulation would have upon the enterprise concerned and the impact upon legitimate local interests," as well as "the applicant's legislative grant of authority, alternative locations for the facility in less restrictive zoning areas, . . . alternative methods of providing the needed improvement[,] intergovernmental participation in the project development process and an opportunity to be heard" (*Matter of County of Monroe [City of Rochester]*, 72 NY2d at 343 [internal quotation marks and citations omitted]). "Realistically, one factor in the calculus could be more influential than another or may be so significant as to completely overshadow all others, but no element should be thought of as ritualistically required or controlling" (*id.* [internal quotation marks and citation omitted]).

Supreme Court found that there were no material and relevant factual issues, and it then set forth in detail its analysis weighing the various pertinent factors. These are co-equal municipalities feuding over uses that are important to both towns. Chenango, after having its previously effective method of discharging effluent adversely affected as a result of mining activities in Fenton, needed an environmentally acceptable alternative for such discharge. Fenton was concerned about maintaining the integrity of a potable water supply, and Chenango, which ostensibly also draws water from the aquifer, shared this concern. Various studies, close monitoring by governmental agencies including DEC and repeated frequent post-construction testing failed to reveal any negative impact on the aquifer of the shorter discharge route. Significantly, despite ample opportunities over the course of many years, Fenton failed to produce a report from any expert or any other admissible

proof indicating a view contrary to the various studies and agency determinations supporting the safety of the shorter route.

A primary contention of Fenton is that it raised a factual issue as to whether it had adequate notice that Chenango was pursuing the shorter discharge route. However, Fenton participated in discussions with DEC and Chenango where the shorter discharge route was an option under serious consideration. Although Fenton elected to cease its participation in these discussions in mid-2004, thereafter, notices of Chenango's permit application to construct the shorter route were published in the same local newspaper used by Fenton for notices, the local newspaper included an article about the planned extension, and the project was open and obvious once construction began. We agree with Supreme Court that Fenton had sufficient notice. We further find that Supreme Court's analysis and conclusion, after weighing the factors articulated in *County of Monroe,* is sound and should be upheld.

Finally, Supreme Court did not abuse its discretion in denying plaintiffs' motion to renew since they failed to set forth a reasonable justification for not presenting the proffered additional facts in their original motion (*see Kahn v Levy,* 52 AD3d 928, 929 [2008]).

Mercure, A.P.J., Peters, Rose and Garry, JJ., concur. Ordered that the orders are affirmed, without costs.